**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

**SELENA V.,**

                              **Plaintiff,**                              **21-CV-1267Sr**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                              **Defendant.**

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

## <u>DECISION AND ORDER</u>

As set forth In the Standing Order of the Court regarding Social Security

Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have

consented to the assignment of this case to the undersigned to conduct all proceedings

in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g).

Dkt. #20.

## BACKGROUND

Plaintiff was diagnosed with Hodgkin's Lymphoma stage II in 2005 and

was successfully treated with chemotherapy and radiation, causing hypothyroidism and

thyroid nodules which required monitoring. Dkt. #6, p.1046. Plaintiff received

supplemental security income ("SSI"), disability payments from the Social Security

Administration ("SSA"), as a child, but was found capable of employment under adult

disability standards as of November 23, 2018. Dkt. #6, p.132. Plaintiff applied for adult

SSI disability benefits on December 19, 2018, at the age of 21, alleging disability due to

mental health, thyroid tumors, ovarian cysts, sleep disorder, anxiety and panic attacks. Dkt. #6, pp.72-73.

On February 25, 2021, plaintiff appeared by telephone conference call with counsel and testified, along with an impartial vocational expert ("VE"), David Van Winkle, at an administrative hearing before Administrative Law Judge ("ALJ"), Theodore Kim. Dkt. #6, pp.20-47. Plaintiff testified that she had completed high school[1] and obtained an Associate's degree.[2] Dkt. #6, p.26. Plaintiff lived with her daughter, age 11 months, but testified that she was unable to care for her without the assistance of her mother and the child's father due to her back pain and anxiety, depression, post-partum depression and post-partum psychosis. Dkt. #6, pp.26-27. Plaintiff experiences anxiety attacks a couple of times a week which manifested with trembling, nausea, and an inability to breathe. Dkt. #6, p.28. Her anxiety has worsened following her pregnancy, causing her to hear noises and see things in her peripheral vision. Dkt. #6, pp.29-30. She is afraid that one day she will walk into her daughter's room and her daughter won't be there or will be levitating. Dkt. #6, pp.30-31. Plaintiff is unable to fall asleep because she over thinks and is unable to stay asleep because of nightmares, but she also doesn't ever want to get out of bed because of her depression. Dkt. #6, pp.30 & 33. She doesn't change her clothes every day and doesn't want to shower or brush her teeth or hair. Dkt. #6, p.31. She testified that her back pain limits her ability to sit more

---

[1] Plaintiff graduated from Buffalo Public Schools Riverside Institute of Technology with a Regents Diploma in 2015. Dkt. #6, p.483.

[2] Plaintiff received an Associates Degree in Applied Science with a Major in Early Childhood Education from Erie Community College in 2019. Dkt. #6, p.494.

than ten minutes at a time, explaining that she stands most of the day trying to get comfortable, but can't stand more than 3-4 minutes at a time. Dkt. #6, pp.31-32. She only ever holds her daughter when she is sitting down and someone else puts her next to plaintiff. Dkt. #6, p.32. She requires assistance to shower and to put on her pants and socks. Dkt. #67, p.35. Plaintiff uses an inhaler 3-4 times per day. Dkt. #6, p.33.

When asked to assume an individual with plaintiff's age, education and lack of relevant work experience who could perform work at the light exertion level and occasionally kneel, crouch, stoop, balance, crawl, climb stairs and ramps, but could not climb ladders, ropes or scaffolds or be exposed to unprotected heights and moving mechanical parts, and who can have occasional exposure to dust, mist, gases, noxious odors, fumes, pulmonary irritants poor ventilation and exposure to vibration, and is able to understand, carry out and remember simple instructions and make simple work-related decision with occasional interactions with supervisors and co-workers, but no interaction with the public, and can occasionally deal with changes in a routine work setting but cannot perform work requiring a specific production rate such as assembly line work, the VE testified that such an individual could work as a room cleaner, copy machine operator, or mail clerk, each of which were unskilled, light exertion positions. Dkt. #6, pp.40-41. If the individual was also required to change position every 30 minutes, the VE testified that there would not be any jobs available. Dkt. #6, p.42. If the individual was off task 20% of the workday and absent from work 2 days per month, the individual would be precluded from work. Dkt. #6, pp.42-43.

The ALJ rendered a decision that plaintiff was not disabled on May 11, 2021. Dkt. #6, pp.141-153. The Appeals Council denied review on October 29, 2021 Dkt. #6, p.8. Plaintiff commenced this action seeking review of the Commissioner's final decision on December 7 2021. Dkt. #1.

**DISCUSSION AND ANALYSIS**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step

sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a). At step one, the claimant must demonstrate that she is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that she has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient Residual Functional Capacity ("RFC"), for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy based on claimant's age, education and work experience. 20 C.F.R. § 416.920(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since her application date of December 19, 2018; (2) plaintiff's asthma, obesity, nodular sclerosis Hodgkin lymphoma of lymph nodes of multiple regions, thyroid tumor, bipolar II disorder, panic disorder, major depressive disorder, adjustment disorder and anxiety constitute severe impairments; (3) plaintiff's impairments did not meet or equal

any listed impairment; (4) plaintiff retained the RFC to perform light work with the following limitations: occasional kneeling, crouching, stooping, balancing, crawling, climbing stairs and ramps, exposure to dust, mists, gases, noxious odors, fumes, pulmonary irritants poor ventilation and vibration and no climbing of ladders, ropes and scaffolds, exposure to unprotected heights and moving mechanical parts with the ability to understand, carry out and remember simple instructions and make simple work related decisions with occasional changes in a routine work setting that does not require a specific production rate and no more than occasional interaction with supervisors and coworkers and no interaction with the public; and (5) plaintiff was capable of working as an office mail clerk, house cleaner and copy machine operator, each of which were unskilled, light exertion positions, and was not, therefore, disabled within the meaning of the SSA. Dkt. #6, pp.143-152.

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ failed to reconcile his RFC with Dr. Ippolito's assessment, which the ALJ found somewhat persuasive. Dkt. #16-1, p.11. Specifically, plaintiff argues that the ALJ failed to properly account for Dr. Ippolito's opinion that plaintiff had moderate limitations with respect to regulating her emotions, controlling her behavior, and maintaining her well-being. Dkt. #16-1, p.13. Plaintiff also argues that the ALJ failed to properly evaluate employability assessments completed by NP Hage on October 21, 2019 and July 1, 2020. Dkt. #16-1, p.14. Specifically, plaintiff argues that the ALJ's conclusion that NP Hage's opinion was inconsistent with the medical record was insufficient. Dkt. #16-1, p.17. Plaintiff also challenges the ALJ's assessment that

plaintiff's condition improved with medication management, noting persistent symptoms despite numerous adjustments to her pscyhiatric medication. Dkt. #16-1, p.17. Plaintiff emphasizes that plaintiff maintained an extensive treating relationship with NP Hage. Dkt. #16-1, pp.17-18.

The Commissioner responds that plaintiff overstates the impact of the moderate limitations identified by NP Hage and Dr. Ippolito, and argues that the ALJ adequately accounted for such limitations in his RFC. Dkt. #18-1, pp.12-15 & 20-23. The Commissioner also argues that the ALJ's RFC is further supported by state agency consultants, Dr. Juriga and Dr. Bruni. Dkt. #18-1, p.17. The Commissioner notes that mental health treatment focused on situational stressors, mental status examinations were essentially normal, and plaintiff's symptoms were responsive to medication. Dkt. #18-1, pp.21-22. Finally, the Commissioner argues that moderate limitations are not categorically preclusive of the ability to work and that plaintiff's activities of daily living do not suggest that plaintiff was disabled. Dkt. #18-1, pp.19 & 26-27.

The ALJ determined that plaintiff had a moderate limitation in her ability to interact with others. Dkt. #6, p.145. In support of this determination, the ALJ relied upon plaintiff's testimony that she experiences anxiety attacks a few times a week and does not like to go places alone because she does not like to be around people. Dkt. #6, p.145. The ALJ also relied upon the opinion of Janine Ippolito, Psy.D., who examined plaintiff on April 2, 2019, and observed that plaintiff was tense, nervous and anxious. Dkt. #6, p.1314. As relevant to the issues raised by plaintiff in this action, Dr. Ippolito

opined that plaintiff could "interact adequately with supervisors, coworkers and the
public and regulate emotions, control behavior and maintain well-being with moderate
limitations . . . due to her emotional distress." Dkt. #6, p.1315.

The ALJ also considered opinions upon state agency review by S. Juriga,
PhD., dated April 9, 2019 and T. Bruni, PhD., dated July 2, 2019. Dkt. #6, p.150. Dr.
Juriga opined that plaintiff would be moderately limited in her ability to interact
appropriately with the general public, respond appropriately to criticism from
supervisors, maintain socially appropriate behavior, and respond appropriately to
changes in the work setting, but would have no significant limitation in her ability to get
along with coworkers or peers. Dkt. #6, p.87. Dr. Bruni determined that the medical
evidence indicated that plaintiff was capable of simple work in a low contact setting
given her demonstrated ability to cope with ongoing life stressors while living
independently and maintaining her schooling and relationships. Dkt. #6, p.101.

The ALJ noted plaintiff's long history of treatment with Psychiatric Mental
Health Nurse Practitioner Katherine Hage and her opinion, as set forth in a Medical
Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug
Addiction Determination dated October 31, 2019,[3] that plaintiff was moderately limited
in her ability to carry out instructions, maintain attention and concentration, interact
appropriately with others, maintain socially appropriate behavior without exhibiting

---

[3] NP Hage expressed the same opinion on July 1, 2020. Dkt. #14, p.170.

behavior extremes, and function in a work setting at a consistent pace. Dkt. #14, p.167. While recognizing NP Hage's opinion that plaintiff should not work at this time, the ALJ noted that the decision regarding the ability to work is a decision left to the Commissioner and concluded that NP Hage's opinion with respect to plaintiff's capacity to work was not consistent with her treatment records. Dkt. #14, p.167.

The ALJ found each of the opinions somewhat persuasive and generally consistent with the medical evidence, which the ALJ recognized as revealing mood fluctuations due to situational stressors which were receptive to treatment, including adjustment of psychiatric medication. Dkt. #6, pp.150-151. For example, during the time period relevant to this SSI application, plaintiff was mourning a miscarriage, completing her Associate's degree, sustaining a pregnancy, adjusting to parenthood, and experiencing a pandemic. Despite such significant life events and despite variable symptoms of depression and anxiety, plaintiff's mental status exams were consistently within normal limits. While plaintiff reported that her psychiatric symptoms were more severe at the time of NP Hage's October 31, 2019 assessment, plaintiff had stopped her psychiatric medication due to her pregnancy and reported improvement in her symptoms subsequent to the July 1, 2020 assessment following adjustment of her psychiatric medications postpartum. Dkt. #14, pp.334 & Dkt. #15, pp.42 & 58.

"It is well-settled that an ALJ is not required to credit a physician's statement on an issue reserved to the Commissioner, such as that a claimant is 'unable to work.'" David C. v. Comm'r of Soc. Sec., 659 F. Supp.3d 354, 369 (W.D.N.Y. 2023).

Moreover, contrary to plaintiff's argument, the ALJ's limitation to simple, unskilled work with limited social interaction is sufficient to accommodate plaintiff's moderate limitations in regulating emotions and interacting adequately with supervisors, co-workers and the public. *Allisa P. v. Comm'r of Soc. Sec.,* 21-CV-556, 2024 WL 278227, at *10 (W.D.N.Y. Jan. 25, 2024); *Kyle L. C. v. Comm'r of Soc. Sec.*, 21-CV-6097, 2023 WL 1858079, at *6 (W.D.N.Y. Feb. 9, 2023); *See Mayer v. Comm'r of Soc. Sec.*, 18-CV-62, 2019 WL 2266795, at *5 (W.D.N.Y. May 28, 2019) ("The Second Circuit has repeatedly held that 'moderate' limitations [in mental functioning] do not preclude a plaintiff's ability to perform unskilled work."). Given plaintiff's testimony regarding her symptoms and evidence in the medical record of plaintiff's ongoing mental health symptoms, the ALJ further determined that a prohibition on interaction with the public and production pace work was appropriate. Dkt. #6, p.150. An ALJ's imposition of more restrictive limitations than those contained in the medical opinions of record is generally not a basis for remand. *Riederer v. Comm'r of Soc. Sec.*, 464 F. Supp.3d 499, 507 (W.D.N.Y. 2020). Thus, the ALJ  properly assessed the medical opinions and evidence of record to determine that plaintiff was capable of performing substantial gainful employment despite her mental impairment.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #16), is denied and the Commissioner's motion for judgment on the pleadings (Dkt. #18), is granted.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:**      **Buffalo, New York**
                **February 16, 2024**

                                         _s/ H. Kenneth Schroeder, Jr._
                                         **H. KENNETH SCHROEDER, JR.**
                                         **United States Magistrate Judge**